UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
TRANSFIELD ER FUTURES LTD.,

                                 Plaintiff,          09 CV 2086 (PKC)

-v-                                         **SECOND AMENDED**
                                                    **VERIFIED COMPLAINT**

BRAVE BULK TRANSPORT LTD., MONROVIA
a/k/a BBT (BRAVE BULK TRANSPORT) LTD.,
MONROVIA, BRAVE BULK TRANSPORT
LTD., MALTA a/k/a BBT (BRAVE BULK
TRANSPORT) LTD., MALTA, and WELLINGTON
SHIPPING LTD,

                              Defendants.
-------------------------------------------------------------------x

       Plaintiff, TRANSFIELD ER FUTURES LTD. (hereinafter "TRANSFIELD") by its

attorneys, CHALOS & CO, P.C., as and for its Second Amended Verified Complaint against

Defendants, BRAVE BULK TRANSPORT LTD., MONROVIA a/k/a BBT (BRAVE BULK

TRANSPORT) LTD., MONROVIA, BRAVE BULK TRANSPORT LTD., MALTA a/k/a

BBT (BRAVE BULK TRANSPORT) LTD., MALTA, (hereinafter collectively known as

"BRAVE BULK") and WELLINGTON SHIPPING LTD (hereinafter "WELLINGTON")

alleges upon information and belief as follows:

JURISDICTION

       1.    The Court has subject matter jurisdiction by virtue that the underlying claim

herein is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal

Rules of Civil Procedure and within the admiralty and maritime jurisdiction of this Court

under 28 U.S.C. § 1333.

## THE PARTIES

2.    At all times material hereto, Plaintiff, TRANSFIELD, was, and still is, a foreign business entity, with a principal place of business in the British Virgin Islands.

3.    At all times material hereto, Defendant, BRAVE BULK TRANSPORT LTD., MONROVIA a/k/a BBT (BRAVE BULK TRANSPORT) LTD., MONROVIA, was and still is a foreign business entity duly organized and existing pursuant to the laws of Liberia, with a principal place of business at: Apollon Business Center Bldg, 331, Kifisias Avenue, Kifisia - Greece.

4.    At all times material hereto, Defendant BRAVE BULK TRANSPORT LTD., MALTA a/k/a BBT (BRAVE BULK TRANSPORT) LTD., MALTA, was and still is a foreign business entity duly organized and existing pursuant to the laws of Malta, with a principal place of business at: Apollon Business Center Bldg, 331, Kifisias Avenue, Kifisia - Greece.

5.    At all times material hereto, Defendant WELLINGTON was and still is a foreign business entity at 331 Kifisias Avenue, Kifisia, Athens 145 61 Greece.

## FACTS AND CLAIM

6.    On or about September 9, 2008, Defendants, BRAVE BULK, entered into a forward freight agreement (hereinafter "FFA") with Plaintiff TRANSFIELD. *See Forward Freight Agreement, attached hereto as Exhibit 1.*

7.    This agreement is a maritime contract.

8.    Specifically, the FFA was to run from January 2009 through December 2009, or 182.5 days, at a contract rate of USD $44,000.00 per day.

9.      Payment is due in the form of a Settlement Sum,[1] to be paid on the later of two (2) London business days after presentation of invoice or five (5) London business days after the Settlement Date (the last Baltic Exchange Index publication day of each month).

10.     Defendants, BRAVE BULK, failed to pay the settlement sum due and owing on December 24, 2008; the contract month in the FFA.

11.     Plaintiff, TRANSFIELD, rendered an invoice to Defendants, BRAVE BULK, on or about February 23, 2009, for the Settlement Sum due and owing pursuant to the terms of the FFA, in the amount of USD $613,838.20. *See Invoice, attached hereto as Exhibit 2.*

12.     Despite demands by Plaintiff, Defendants, in breach of the terms of the FFA, have failed, neglected and/or otherwise refused to pay TRANSFIELD the full amount due and owing pursuant to the Agreement.

13.     Plaintiff, TRANSFIELD, served BRAVE BULK a notice dated March 3, 2009, informing Defendants, that because of Defendants nonpayment of the full amounts due and owing under the FFA, Plaintiff was invoking the early termination of the FFA in accordance with the terms of the ISDA Master Agreement.

14.     As a result of the early termination of the FFA, Defendants, BRAVE BULK, owe to Plaintiff, TRANSFIELD on all twelve (12) months under the FFA.

15.     To date, the total amount undisputedly due and owing to TRANSFIELD by Defendants is USD $5,505,053.80. *See Calculation Table, attached hereto as Exhibit 3.*

16.     The FFA provides a forum selection clause calling for claims to be submitted to the English courts, the action herein, submitted in accordance with Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil

---

[1] The "Settlement Sum" is the difference between the contract rate and the settlement rate (average rate published by the Baltic Exchange) multiplied by the contract quantity (182.5 Days).

Procedure, is not and cannot be considered a waiver of the FFA's forum selection clause. Plaintiff has or shortly will commence litigation after the commencement of this action.

17.    In London civil proceedings where English law applies, costs, including a reasonable allowance for attorney's fees, are routinely awarded.

18.    It is estimated that it will take approximately three (3) years to resolve this matter. The following is an estimate of interest and attorneys' fees expected to accrue in addition to Plaintiff's principal claim:

| | | |
|---|---|---|
| A. | Principal claim: | $5,505,053.80 |
| B. | Estimated interest on Principal claim: 3 years at 7.5%, compounded quarterly | $1,374,702.09 |
| C. | Estimated attorneys' fees and costs: | $500,000.00 |
| | **Total Claim:** | **$7,379,755.89** |

19.    Therefore, TRANSFIELD's total claim for breach of the maritime contract against Defendants is, in the aggregate, USD $7,379,755.89.

20.    Defendant WELLINGTON is a receiving/paying agent of BRAVE BULK, such that WELLINGTON is now, or will soon be, holding assets belonging to BRAVE BULK, or vice versa.

21.    When Plaintiff contracted with Defendants BRAVE BULK in September 2008, the BRAVE BULK entities were known to be part of the VAFIAS GROUP of Companies with an address at 331 Kifisias Avenue, Kifisia, Athens 145 61 Greece.

22.    Investigations reveal that BRAVE BULK has distributed invoices to parties requesting payments to BRAVE BULK be paid into a Greek Bank account in the name of Defendant WELLINGTON, which is operated out of the Greek address for the VAFIAS GROUP.

23.     Upon information and belief, Defendants BRAVE BULK and Defendant WELLINGTON have common ownership and are controlled and operated through the VAFIAS GROUP.

24.     It is not general practice in the maritime community, nor anywhere else, for independent companies to make or receive large payments on behalf of other independent companies.

25.     Payments sent or received on behalf of another independent company are suggestive of a relationship that is not "arms length."

26.     Upon information and belief, the purpose of diverting US Dollar transfers to WELLINGTON's account is to avoid maritime attachment of BRAVE BULK's electronic fund transfers in an attempt to defraud legitimate creditors such as Plaintiff.

27.     Upon information and belief, such transfers to WELLINGTON of funds belonging to BRAVE BULK are done without adequate consideration, in an attempt to defraud legitimate creditors such as Plaintiff.

28.     Upon information and belief, at all material times, there existed such unity of ownership and interest between Defendants BRAVE BULK and Defendant WELLINGTON that no separation exists between them and the corporate form of Defendants BRAVE BULK have been disregarded such that Defendant WELLINGTON primarily transacted the business of Defendants BRAVE BULK.

29.     At all material times, Defendant WELLINGTON has disregarded the corporate form of Defendants BRAVE BULK to the extent that Defendant WELLINGTON was actually carrying on BRAVE BULK's business and operations of Defendant BRAVE BULK as the same were their own, or vice versa.

30.     Based on the foregoing investigation, there are reasonable grounds to conclude that the Defendant WELLINGTON is the alter-ego of Defendants BRAVE BULK and, therefore, Plaintiff TRANSFIELD has a valid prima facie *in personam* claim against Defendant WELLINGTON based upon alter ego liability.

BASIS FOR ATTACHMENT

31.     Defendants, BRAVE BULK and WELLINGTON, cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but Defendants are believed to have or will have during the pendency of this action, certain assets, accounts, freights, monies, charter hire, credits, effects, payment for bunkers, goods or services, bills of lading, cargo and the like belonging to, claimed by, or for the benefit of, the Defendants within this District held by various parties, as garnishees, including but not limited to electronic fund transfers.

32.     Defendants are continuously engaged in international shipping and conduct business in U.S. Dollars. Nearly all companies engaged in the international shipping industry transact business in U.S. Dollars and therefore regularly have assets in New York City. Dollars are the *lingua franca* of international commerce.

33.     All international U.S. dollar transfers are processed by intermediary banks in the United States, mainly in New York City. The Clearing House Interbank Payment System represents that it processes 95% of those transfers.

34.     Plaintiff believes that some of these assets, to wit: accounts; bank accounts; monies; charter hire; credits; debts owed to the Defendants; effects; payments for bunkers, cargo, goods or services; debts; unmatured debts; bills of lading; payments from the

purchasers of cargoes; freight and/or hire payments to or from owners of vessels, or charterers, to, from, or for the benefit of, Defendants and/or Clearing House Interbank Payment System (CHIPS) credits or funds being transferred through intermediary banks, are located in this District in the possession of garnishees, including: ABN AMRO BANK, American Express Bank, Bank of America, Bank of China, Bank of New York, Bank of Tokyo Mitsubishi UFJ Ltd., Barclay's Bank, BNP Paribas SA, Calyon, Calyon Financial, Inc., Citibank N/A, Credit Suisse Securities (USA) LLC, Deutsche Bank, HSBC (USA), JPMorgan Chase Bank, Mashreqbank, Societe Generale, Standard Chartered Bank, UBS AG, U.S. Bank, Wachovia Bank, Wells Fargo Bank, CHIPS and possibly other banks or financial institutions located in New York.

WHEREFORE, Plaintiff prays:

A.     That process in due form of law issue against the Defendants, citing them to appear and answer under oath all, and singular, the matters alleged in the Second Amended Verified Complaint;

B.     That since the Defendants cannot be found within the District, as set forth in the Declaration of George M. Chalos, (*see Exhibit 4, attached hereto*) and pursuant to Rule B and Rule E of the Supplemental Rules of Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B and Rule E of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all of the Defendants' tangible or intangible property or any other funds held by any garnishees in the district which are due and owing, or other property of, or for the benefit of, the Defendants, up to the amount of USD $7,379,755.89 to secure and satisfy the Plaintiff's claims, and that all persons claiming any interest in the same be cited to

appear and pursuant to Supplemental Admiralty Rule B and Rule E answer the matters

alleged in the Complaint;

C.    That Plaintiff may have such other, further and different relief as may be just

and proper.

Dated: Oyster Bay, New York
        May 26, 2009

                                   CHALOS & CO, P.C.
                                   Attorneys for Plaintiff
                                   TRANSFIELD ER FUTURES LTD.

                        By:    _____
                                   George M. Chalos (GC-8693)
                                   123 South Street
                                   Oyster Bay, New York 11771
                                   Tel: (516) 714-4300
                                   Fax: (516) 750-9051
                                   Email: gmc@chaloslaw.com

# EXHIBIT 1



# IFCHOR S.A.

SHIPBROKERS & CHARTERING AGENTS

SECURITIES & FFA DIVISION
PLACE PÉPINET 1 — CH-1003 LAUSANNE, SWITZERLAND
TEL. +41 21 310 3131 — FAX +41 21 310 3100
E-MAIL: securities@ifchor.ch



## FORWARD FREIGHT AGREEMENT BROKERS ASSOCIATION ("FFABA")

## FORWARD FREIGHT AGREEMENT FFABA 2007 TERMS

**Trade Ref:**          8.909.0.LdVe.TC/Ifchor
**Contract Date:**      Tuesday, September 9, 2008

The purpose of this confirmation is to state the terms and conditions of the forward freight swap agreement entered into between:

**Seller**
**Transfield – ER Futures Ltd., Seoul., Panama guaranteed by Transfield Shipping Inc., Panama**
c/o Transfield - ER Resources Ltd., Hong Kong
Room 1738 17F Sun Hung Kai Centre
30 Harbour Road
Wonchai - Hong Kong
Tel N. + 852 28 27 08 89
Fax N. + 852 28 27 09 36
Email. christian.norup@transfield-er.com
P.I.C. Christian Norup

        and

**Buyer**
**BBT (Brave Bulk Transport) Ltd., Monrovia**
**C/o BBT (Brave Bulk Transport) Ltd., Malta**
Apollon Business Center Bldg
331, Kifisias Avenue
Kifisia - Greece
Tel N. + 30 210 625 00 31
Fax N. + 30 210 625 00 18
Email. drychart@brave.gr
P.I.C. George Leventis

1

The agreement between the parties set out in this Confirmation is a Confirmation pursuant to the Master Agreement.

In this Confirmation, **"Master Agreement"** has the meaning given to it in clause 9 if that clause applies, and if it does not, means any master agreement by which the Transaction entered into pursuant to and in accordance with this Confirmation is governed.

Until superseded by notice information in a subsequent Confirmation or other communication, the above addresses are hereby recognized as the correct addresses to which any notification under this Confirmation may be properly served.

The terms of this Confirmation are as follows:

1)  **Contract Route(s):**

    As per the arithmetical average of the **Routes 1A, 2A, 3A and 4** [Transatlantic TC Round Voyage, TC Trip Out, Transpacific TC Round Voyage, TC Trip Back] of the **Baltic Panamax Index** as defined by the Baltic Exchange on the Contract Date and any route replacing or substituting that route subsequently published by the Baltic Exchange on or before the Settlement Date and with effect from the date of such replacement or substitution.

2)  **Contract Rate:**  USD 44'000.00 per day

3)  **Contract Quantity:**  182.5 days (see below)

4)  **Contract Months:**  **January 2009 (15.5 days) - February 2009 (14 days) - March 2009 (15.5 days) - April 2009 (15 days) - May 2009 (15.5 days) - June 2009 (15 days) - July 2009 (15.5 days) - August 2009 (15.5 days) - September 2009 (15 days) - October 2009 (15.5 days) - November 2009 (15 days) - December 2009 (15.5 days)**

5)  **Settlement Date:**

    The last Baltic Exchange Index publication day of each Contract Month.

6)  **Settlement Rate:**

    (a)  Each settlement rate (the **"Settlement Rate"**) shall be the unweighted average of the rates for the Contract Route(s) published by the Baltic Exchange over each

2

Settlement Period (defined as all Baltic Exchange Index publication days of each applicable Contract Month up to and including the Settlement Date).

(b)   If for any reason the Baltic Exchange cannot provide any rate required for establishing the Settlement Rate, then the current chairman of the FFABA may be instructed by either party to form a panel comprising of a minimum of three independent brokers (the **"Panel"**) to determine an appropriate rate, which determination will be final and binding on both parties.

(c)   Each party shall bear its own costs and expenses in connection with any determination made pursuant to this clause 7.

(d)   The parties shall severally indemnify and hold harmless each of the members of the Panel, the Baltic Exchange and its members and the FFABA and its members (the **"Indemnified Persons"**) against all liabilities, actions, demands, costs and expenses incurred by any of them arising directly or indirectly out of or in connection with the formation of the Panel and any determination made by the Panel.

(e)   As between the parties, each party shall have a right of contribution against the other party in respect of any indemnity payment made pursuant to the preceding paragraph so that their respective liabilities pursuant to that paragraph shall be equal.

**7)   Settlement Sum:**

The **"Settlement Sum"** is the difference between the Contract Rate and the Settlement Rate multiplied by the Quantity by Contract Month.  If the Settlement Rate is higher than the Contract Rate, the Seller shall pay the Buyer the Settlement Sum.  If the Settlement Rate is lower than the Contract Rate, the Buyer shall pay the Seller the Settlement Sum.

**8)   Payment Procedure and Obligations:**

(a)   Payment of the Settlement Sum is due on the later of two (2) London business days after presentation of payee's invoice (with complete payment instructions) or five (5) London business days after the Settlement Date and for this purpose a **"London business day"** means a day (other than a Saturday or Sunday) on which commercial banks are open for business in London) . The Settlement Sum will be deemed "paid" when it has been received into the bank account designated by the payee.

(b)   Payment of the Settlement Sum shall be made telegraphically, in full, in United States dollars.  The costs incurred in effecting payment shall be for the account of the payer.  Payment may only be effected directly between the parties.  The Settlement Sum shall be paid without any deduction or set-off except as permitted pursuant to the Master Agreement or otherwise as agreed by the Buyer and the Seller in writing.

3

**9)  ISDA Master Agreement:**

This clause 9 applies only if either:

(i) this Confirmation does not already constitute a Confirmation under an existing master agreement entered into by the parties to this Confirmation; or

(ii) the parties agree, either by virtue of clause 20 or otherwise, that the terms of the Master Agreement that is constituted by this clause are to replace any such existing master agreement.

This Confirmation constitutes and incorporates by reference the provisions of the 1992 ISDA® Master Agreement (Multicurrency – Cross Border) (without Schedule) as if they were fully set out in this Confirmation and with only the following specific modifications and elections:

(a) Section 2(c)(ii) shall not apply so that a net amount due will be determined in respect of all amounts payable on the same date in the same currency in respect of two or more Transactions;

(b) Seller is the Calculation Agent except where the Seller is the Defaulting Party in which event Buyer is the Calculation Agent;

(c) the most current published set of ISDA® Commodity Definitions and ISDA® Definitions shall apply;

(d) Credit Event Upon Merger is applicable to both parties;

(e) for the purposes of payments on Early Termination, Loss will apply and the Second Method will apply;

(f) Automatic Early Termination will apply to both parties;

(g) the Termination Currency is United States dollars;

(h) the Applicable Rate shall mean the one month USD-LIBOR plus 2%, reset daily and compounded monthly;

(i) Local Business Day or banking day shall each refer to such a day in London;

(j) such other modifications as shall be necessary for such incorporation;

(k) references to "this Master Agreement", "this Agreement", "herein" and other like expressions shall be construed as being references to this Confirmation incorporating such provisions,

4

and this Confirmation, including such incorporated provisions, shall govern the Transaction referred to in this Confirmation and any other Transaction referred to in clauses 20 and 21.

The agreement constituted and incorporated by the incorporation of the provisions of the 1992 ISDA® Master Agreement (Multicurrency - Cross Border) (without Schedule) pursuant to this clause is referred to in this Confirmation as the **"Master Agreement"**.

**10)** **Capacity and Good Standing:**

In line with and in addition to (as appropriate) the representations contained in Section 3 of the Master Agreement, each party represents to the other party that:

(a) it is duly organized and validly existing under the laws of the jurisdiction of its organization or incorporation, and is solvent and in good standing;

(b) it has the power to execute, deliver, and perform this Confirmation;

(c) all governmental and other consents that are required to have been obtained by it with respect to this Confirmation have been obtained and are in full force and effect and all conditions of any such consents have been complied with;

(d) in the event that a party to this Confirmation is a person organized under, domiciled in, or having its principal place of business in, the United States, each party represents to the other party that it is an "eligible contract participant" as defined in § 1a(12) of the Commodity Exchange Act (7 U.S.C. § 1a(12), as amended).

**11)** **Telephone Recording:**

Each party consents to the recording of telephone conversations in connection with this Confirmation.

**12)** **Commission:**

Each of the parties agrees to pay brokers' commission to any broker (a **"Broker"**) as agreed with any Broker.

**13)** **Non-Assignability:**

Except as provided in Section 7 of the Master Agreement, this Confirmation is non-assignable unless otherwise agreed in writing between the parties to this Confirmation.

**14)** **Principal To Principal:**

5

This Confirmation is a principal to principal agreement with settlement directly between the two parties. Both parties agree that **Ifchor SA** shall be under no obligation or liability In relation to this Confirmation. Both parties agree jointly and severally to indemnify and hold harmless **Ifchor SA** against all actions, including but not limited to all claims, demands, liabilities, damages, costs and expenses both from the two parties and any third party. Claims, demands, liabilities, damages, costs and expenses suffered or incurred are to be settled directly by or between the two parties.

**15)    Law and Jurisdiction:**

This Confirmation shall be governed by and construed in accordance with English law and shall be subject to the exclusive jurisdiction of the High Court of Justice in London, England. The terms of Section 12(a) of the Master Agreement notwithstanding, proceedings may be validly served upon either party by sending the same by ordinary post and/or by fax to the addresses and/or fax numbers for each party given above.

**16)    Entire Agreement:**

This Confirmation and the Master Agreement set out the entire agreement and understanding of the parties with respect to the subject matter of this Confirmation and supersede all oral communication and prior writings with respect thereto.

**17)    Payment Account Information:**

**For Seller:**
Bank address:

The Hongkong and Shanghai Banking Corp. Ltd Hong Kong
Swift Code: HSBCHKHHHKH
In Favor of: Transfield ER Futures Ltd.
USD A/C No: 808449854274

Corespondent Bank
HSBC Bank USA, New York
A/C No. 000044415
Swift Code: MRMDUS33

**For Buyer:**
Bank address:

EFG EUROBANK ERGASIAS
83, AKTI MIAOULI STREET
185 38 PIRAEUS – GREECE
SWIFT CODE: EFGBGRAA
TEL: 45 87 840, FAX: 45 87 856
INTO          ACCOUNT          NR: 0026.0029.20.1200301994
IBAN       NR:       GR37026600 290000201200301994
IN FAVOUR OF: BRAVE BULK TRANSPORT LTD

**18)    Third party rights**

(a)    Unless provided to the contrary in this Confirmation, a person who is not a party to this Confirmation has no rights under the Contracts (Rights of Third Parties) Act 1999 to enforce or enjoy the benefit of any term of this Confirmation.

6

(b)     Any Indemnified Person and any Broker shall have the right to enjoy the benefit of and enforce the terms of clause 6(d) in the case of any Indemnified Person and clause 14 in the case of any Broker.

(c)     Notwithstanding any term of this Confirmation, the consent of any person who is not a party to this Confirmation is not required to rescind or vary this Confirmation.

## 19)     Partial Invalidity

If, at any time, any provision of this Confirmation or the Master Agreement is or becomes illegal, invalid or unenforceable in any respect under any laws of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions nor the legality or enforceability of the provision under the laws of any other jurisdiction will in any way be affected or impaired.

## 20)     Inclusion of historical Confirmations under Master Agreement

(a)     **Unless the parties to this Confirmation specifically agree otherwise in writing, this clause 20 shall apply in accordance with its terms.**

(b)     This clause 20 applies to this Confirmation and to every agreement entered into between the parties to this Confirmation (and no other persons) before the date of this Confirmation that is in respect of a forward freight swap, option or derivative:

(i)     that is expressly stated to be subject to, or is subject to substantially the same terms as, either the FFABA 2000 terms, the FFABA 2005 terms or the FFABA 2007 terms, with or without amendment; and

(ii)     in the case of a Confirmation that is stated to be subject to, or subject to substantially the same terms as, the FFABA 2007 terms that does not incorporate a clause substantially in the same form as this clause 20.

(c)     Each agreement to which this clause 20 applies shall be treated as a Confirmation under the Master Agreement constituted pursuant to clause 9 as if such agreement had been entered into between the parties on the terms of the Master Agreement on the date of the first such Confirmation.

(d)     If there is any inconsistency between the provisions of any agreement constituted pursuant to paragraph (c) above and the agreement constituting a Transaction to which this clause 20 applies, the provisions of the agreement constituting the Transaction to which this clause 20 applies will prevail for the purposes of the Transaction under such agreement.

(e)     This clause 20 shall not affect any rights or obligations of the parties under any Transaction accrued before the date of this Confirmation.

7

(f) This clause 20 is effective notwithstanding any entire agreement clause or similar provision in any such agreement relevant to any such Transaction.

**21)** **Inclusion of subsequent Confirmations under Master Agreement**

(a) **Unless the parties to this Confirmation specifically agree otherwise in writing, this clause 21 shall apply in accordance with its terms.**

(b) This clause 21 applies to every Confirmation that is in respect of a forward freight swap, option or derivative entered into between the parties to this Confirmation (and no other persons) subsequent to an agreement incorporating a Master Agreement (as defined in and pursuant to a clause substantially in the same form as and equivalent to clause 9) having been entered into by them.

(c) Each such subsequent Confirmation shall constitute a Confirmation under the Master Agreement on the terms of clauses 20(c), (d), (e) and (f) as if they were incorporated and fully set out in this clause 21 with appropriate and necessary modifications for such incorporation.

**Signed for the Seller by** **Signed for the Buyer by**

...................................... ......................................
**Duly Authorized Signatory** **Duly Authorized Signatory**

8

# EXHIBIT 2

# Transfield ER Futures Ltd.
c/o Transfield Resources Ltd. as agent
Rm 2538 Sun Hung Kai Centre,
30 Harbour Rd, Wanchai, Hong Kong.
Tel: (852) 2827 0889 Fax: (852) 2587 9952

Brave Bulk Transport Ltd

Invoice Date 31Jan2009
Invoice No Proforma

Reference 08/00163

Payment No. 3

## CONTRACT NO: 89090

NOTE ALL VALUES ARE IN USD

| Reference | Type | Period | Route | Quantity | Fixed | Float | DR | CR |
|---|---|---|---|---|---|---|---|---|
| 60002/2008 | Sell | Jan 09 | P4TC | 15.50 days | 44,000.00 | 4,397.54 | 613,838.20 | |
| Net Debits / Credits | | | | | | | 613,838.20 | 0.00 |
| TOTAL due to : Transfield ER Futures Ltd | | | | | | | | 613,838.20 |
| | | | | | | | 613,838.20 | 613,838.20 |
| | | | | | | | | E.&O.E. |

REMITTANCE DATE : 6Feb2009

BROKER: IFCHOR

*Please remit according to the details below quoting Voucher No and Reference.*

THE HONGKONG AND SHANGHAI BANKING CORP.LTD., HONG KONG

SWIFT Code: HSBCHKHHHKH

In Favour of: Transfield ER Futures Ltd
A/C No: 808-449854-274
VIA BANK:

HSBC BANK USA,NEW YORK
A/C No. 000-0-4441-5
Swift Code: MRMDUS33

Transfield Resources Limited
as agent for Transfield ER Futures Limited

.................................................
*Authorized Signature(s)*

# EXHIBIT 3

Trade Date 09-Sep-08
Contract No.: 83090
Our Trade No.: 60002
Comm %: 0.10%
Broker: IFCHOR
Seller: Transfield ER Futures Ltd.
Buyer: Brave Bulk
# Days: 182.5 Days
Contract Rate: 44,000

Calculation Table

| Period | # Days | Contract Rate | Close Out Rate | Due to TFL | Remarks |
|---|---|---|---|---|---|
| 2009 Jan | (15.5) | 44,000 | 4,397.5357 | 613,838.20 | Settlement Rate |
| 2009 Feb | (14.0) | 44,000 | 10,662.350 | 466,727.10 | Settlement Rate |
| 2009 Mar | (15.5) | 44,000 | 17,575.000 | 409,587.50 | Baltic Yield Curve as of Mar 6, 2009 |
| 2009 Apr | (15.0) | 44,000 | 16,258.000 | 416,130.00 | Baltic Yield Curve as of Mar 6, 2009 |
| 2009 May | (15.5) | 44,000 | 16,258.000 | 430,001.00 | Baltic Yield Curve as of Mar 6, 2009 |
| 2009 Jun | (15.0) | 44,000 | 16,258.000 | 416,130.00 | Baltic Yield Curve as of Mar 6, 2009 |
| 2009 Jul | (15.5) | 44,000 | 13,825.000 | 467,712.50 | Baltic Yield Curve as of Mar 6, 2009 |
| 2009 Aug | (15.5) | 44,000 | 13,825.000 | 467,712.50 | Baltic Yield Curve as of Mar 6, 2009 |
| 2009 Sep | (15.0) | 44,000 | 13,825.000 | 452,625.00 | Baltic Yield Curve as of Mar 6, 2009 |
| 2009 Oct | (15.5) | 44,000 | 14,335.000 | 459,807.50 | Baltic Yield Curve as of Mar 6, 2009 |
| 2009 Nov | (15.0) | 44,000 | 14,335.000 | 444,975.00 | Baltic Yield Curve as of Mar 6, 2009 |
| 2009 Dec | (15.5) | 44,000 | 14,335.000 | 459,807.50 | Baltic Yield Curve as of Mar 6, 2009 |
| Total | (182.5) | | | 5,505,053.80 | |

# EXHIBIT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
TRANSFIELD ER FUTURES LTD.,

                       Plaintiff,

-v-

BRAVE BULK TRANSPORT LTD., MONROVIA
a/k/a BBT (BRAVE BULK TRANSPORT) LTD.,
MONROVIA, BRAVE BULK TRANSPORT
LTD., MALTA a/k/a BBT (BRAVE BULK
TRANSPORT) LTD., MALTA, and WELLINGTON
SHIPPING LTD,

                       Defendants.
-------------------------------------------------------------------x

09 CV 2086 (PKC)
**ATTORNEY'S DECLARATION**
**THAT DEFENDANTS**
**CANNOT BE FOUND**
**WITHIN THE DISTRICT**

      This declaration is executed by **George M. Chalos, Esq.**, counsel for the Plaintiff,

TRANSFIELD ER FUTURES LTD., in order to secure the issuance of a Summons and Process

of Maritime Attachment and Garnishment in the above-entitled, in personam, Admiralty cause.

      Pursuant to 28 U.S.C. §1746, **George M. Chalos, Esq.**, declares under the penalty of

perjury:

      I am a Member of the firm of CHALOS & CO, P.C., attorneys for Plaintiff in the above

referenced matter.

      I am familiar with the circumstances of the Verified Complaint, and I submit this

declaration in support of Plaintiff's request for the issuance of Process of Maritime Attachment

and Garnishment of the property of the defendants, BRAVE BULK TRANSPORT LTD.,

MONROVIA a/k/a BBT (BRAVE BULK TRANSPORT) LTD., MONROVIA, BRAVE BULK

TRANSPORT LTD., MALTA a/k/a BBT (BRAVE BULK TRANSPORT) LTD., MALTA, and

WELLINGTON SHIPPING LTD, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

I have personally inquired or have directed inquiries into the presence of the defendants in this District.

I have personally checked with the office of the Secretary of State of the State of New York, using the Secretary of State's Division of Corporations database, and I have determined that, as of May 26, 2009, the defendants are not incorporated pursuant to the laws of New York, and have not nominated any agent for the service of process within the Southern District of New York.

I have inquired of Verizon Telephone Company whether the defendants can be located within this District. The Verizon Telephone Company has advised me that the defendants do not have any telephone number listings within this District.

I have further consulted with several other telephone directories on the internet, and I have found no separate telephone listings or addresses for the defendants within this District.

I have engaged in a Google search as to whether the defendants can be located within this District. The Google search results did not provide any information that defendants are found in this District.

I am unaware of any general or managing agent(s) within this District for the defendants.

In that I have been able to determine that the defendants have not appointed an agent for service of process within the Southern District of New York and that I have found no indication that the defendants can be found within this District for the purposes of Rule B, I have formed a good faith belief that the defendants do not have sufficient contacts or business activities within this District and do not have any offices or agents within this District to defeat maritime

attachment under Rule B of the Supplemental Rules for Admiralty and Maritime Claims as set

forth in the Federal Rules of Civil Procedure.

It is my belief, based upon my own investigation that the defendants cannot be found

within this District for the purposes of Rule B of the Supplemental Rules of Certain Admiralty

and Maritime Claims of the Federal Rules of Civil Procedure.


Dated: Oyster Bay, New York
      May 26, 2009

                                CHALOS & CO, P.C.
                                Attorneys for Plaintiff
                                TRANSFIELD ER FUTURES LTD.

By:                       _____
                                George M. Chalos (GC-8693)
                                123 South Street
                                Oyster Bay, New York 11771
                                Tel: (516) 714-4300
                                Fax: (516) 750-9051
                                Email: gmc@chaloslaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
TRANSFIELD ER FUTURES LTD.,

                                    Plaintiff,                    09 CV 2086 (PKC)

-v-

                                                          **VERIFICATION OF**
                                                          **COMPLAINT**

BRAVE BULK TRANSPORT LTD., MONROVIA
a/k/a BBT (BRAVE BULK TRANSPORT) LTD.,
MONROVIA, BRAVE BULK TRANSPORT
LTD., MALTA a/k/a BBT (BRAVE BULK
TRANSPORT) LTD., MALTA, and WELLINGTON
SHIPPING LTD,

                                    Defendants.
-------------------------------------------------------------------x

      Pursuant to 28 U.S.C. §1746, GEORGE M. CHALOS, Esq., declares under the penalty of

perjury:

      1.     I am a Member of the law firm of CHALOS & CO, P.C., counsel for the Plaintiff,

TRANSFIELD ER FUTURES LTD., herein;

      2.     I have read the foregoing Second Amended Verified Complaint and know the

contents thereof; and

      3.     I believe the matters to be true based on documents and information obtained

from employees and representatives of the Plaintiff through its agents, underwriters and

attorneys.

      4.     The reason that this verification was made by deponent and not by the Plaintiff is

because Plaintiff is a foreign corporation, whose officers are not in this district, and whose

verification cannot be obtained within the time constraints presented by the circumstances of this

case.

      I declare under penalty of perjury that the foregoing is true and correct.

Dated: Oyster Bay, New York
      May 26, 2009

                                    CHALOS & CO, P.C.
                                    Attorneys for Plaintiff
                                    TRANSFIELD ER FUTURES LTD.

                    By: _____
                                    George M. Chalos (GC-8693)
                                    123 South Street
                                    Oyster Bay, New York 11771
                                    Tel: (516) 714-4300
                                    Fax: (516) 750-9051
                                    Email: gmc@chaloslaw.com